IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**MICHAEL P. GALLAGHER,**

                **Plaintiff,**

    v.                                                CASE NO.03-3454-SAC

**J.L. SHELTON, et al.,**

                **Defendants.**

<u>**MEMORANDUM AND ORDER**</u>

    Plaintiff, a prisoner in the custody of the Kansas Department of Corrections (KDOC), proceeds pro se and in forma pauperis on a complaint filed under 42 U.S.C. § 1983.  In the complaint as first amended, plaintiff seeks damages on five claims for the alleged violation of his constitutional right to practice his religious beliefs while incarcerated in the Norton Correctional Facility (NCF) in Norton, Kansas.

    In his original complaint, plaintiff claims his requests at NCF in 2002 and 2003 for accommodations and religious items for specific Jewish holidays and holy days were denied or honored after the fact.  He further claims he was subjected to an antisemitic comment and prejudicial treatment on the basis of his religion, and claims all defendants who failed to take corrective action on plaintiff's administrative grievances are responsible for the violation of plaintiff's rights under the First Amendment.  Plaintiff amended his complaint shortly thereafter to additionally claim he was served a

meal tainted with urine, and to allege the chaplain failed to help plaintiff secure a Menorah and candles to observe Chanukkuh.[1] Plaintiff seeks damages for the alleged violation of his First Amendment right to practice his religious beliefs, and for the alleged violation of his Fourteenth Amendment right to equal treatment.

By an order dated March 12, 2007, the court summarily dismissed four defendants (Aramark District Director Kroll, Chief Executive Officers of Aramark Corporation, Aramark Correctional Services, and "Aramark/NCF") finding plaintiff's allegations stated no claim for relief under 42 U.S.C. § 1983 against any of these corporate defendants. The court also requested the preparation of a Martinez report,[2] and ordered service of process on the remaining five defendants: Roger Werholtz as Secretary of the Kansas Department of Corrections (KDOC), Gloria Geither as KDOC Director of Religious Programs, NCF Warden Shelton, NCF Deputy Warden Perdue, NCF Chaplain Penner, and NCF Aramark employees Ratliff and Gruwell[3].

---

[1]The court has liberally treated plaintiff's pro se first amended complaint as encompassing the original complaint, and did not require plaintiff to submit an amended complaint that asserted all claims. See Order (Doc. 9). See also Martinez Report (Doc. 45, p.1, n.1)(assuming the amended complaint incorporated the original complaint).

[2]See Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978)(approving order requiring prison officials to investigate facts surrounding inmate's civil rights suit to construct an administrative record from which court may decide jurisdictional issues and make determination of frivolity).

[3]The court previously corrected the spelling of this defendant's name to "Gruwell," to conform to the spelling appearing in the KDOC administrative responses. See Order (Doc. 9). In the motion to dismiss filed by the two Aramark defendants, this

On September 22, 2008, the court denied plaintiff leave to amend the complaint a second time to both assert additional claims arising since the complaint and first amendment were filed, and name additional defendants including the four corporate defendants previously dismissed from the lawsuit by court order.[4] Plaintiff's motion for reconsideration (Doc. 78) of the September 22, 2008, order is denied. Notwithstanding plaintiff's challenge to the court's characterization of plaintiff's December 10, 2003, pleading as a first amended complaint rather than as a supplement to the original complaint, leave of the court would still be required to amend the complaint as proposed by plaintiff after defendants had filed responsive pleadings. Fed.R.Civ.P. Rule 15(a)(2). Plaintiff provides no sound reason for this court to reconsider its decision on September 22, 2008, to deny plaintiff leave to amend the complaint to assert additional claims and name new defendants.

Before the court are motions to dismiss, filed by the five remaining KDOC defendants (Doc. 77), and by the two remaining Aramark defendants (Doc. 72). Having reviewed the record, the court grants both motions.

STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that a defendant may move to dismiss a claim for "failure to state a claim upon which

---

defendant's name is spelled as "Growell." The court accepts both spellings, but will refer to this defendant as "Gruwell."

[4]The court further noted that plaintiff could file a new complaint, after first exhausting administrative remedies on plaintiff's more recent claims.

relief can be granted." Fed.R.Civ.P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991).

A motion to dismiss under Rule 12(b)(6) should be granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, __, 127 S.Ct. 1955, 1974 (2007). To avoid dismissal under this standard, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). If a complaint fails to set forth enough factual allegations to "nudge" the plaintiff's claims "across the line from conceivable to plausible," it must be dismissed for failing to state a claim upon which relief can be granted.[5] Twombly, 127 S.Ct. at 1964-65.

All well-pled factual allegations in a complaint are to be accepted as true and construed in the light most favorable to the plaintiff, Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007)(citation omitted), and the court is to make all reasonable inferences in the plaintiff's favor, Timpanogos Tribe v. Conway, 286

---

[5]This decision abrogated the longstanding standard in Conley v. Gibson, 355 U.S. 41, 45-46 (1967), that a Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief.

F.3d 1195, 1204 (10th Cir. 2002). While a pro se litigant's pleadings are to be liberally construed, Kikumura v. Hood, 467 F.3d 1257, 1258 (10th Cir. 2006), the court must still distinguish well-pleaded facts from conclusory allegations, Ruiz v. McDonnell, 299 F.3d 1173, 1181 (10th Cir. 2002), and must not "assume the role of advocate for the pro se litigant." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiff must plead minimal factual allegations on the material elements that must be proved.[6] Id. Plaintiff's pro se status does not relieve him of the burden to allege sufficient facts on which a recognized legal claim could be based. Jenkins v. Currier, 514 F.3d 1030, 1032 (10th Cir. 2008)(*quoting* Hall at 1110). The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he is entitled to relief. Twombly, 127 S.Ct. at 1965. "Factual allegations must be enough to raise a right to relief about the speculative level." Id.

---

[6]In deciding a Rule 12(b)(6) motion, a federal court may only consider facts alleged within the complaint, but "may review mere argument contained in a memorandum in opposition to dismiss without converting the Rule 12(b)(6) motion into a motion for summary judgment...[and] may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." County of Santa Fe, N.M. v. Public Service Co. of New Mexico, 311 F.3d 1031, 1035 (10th Cir. 2002)(citation and quotations omitted). In the present case, the parties rely on documents submitted by plaintiff or with the Martinez report, and the authenticity of such documents has not been questioned. *See* Hall, 935 F.2d at 1112 (Martinez reports do not fall within rule that a court ordinarily may not look beyond the pleadings in analyzing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)).

DISCUSSION

Plaintiff is a practicing Orthodox Jew in the custody of the Kansas Department of Corrections (KDOC). At all times relevant to his claims in his complaint as amended, plaintiff was incarcerated in Norton Correctional Facility (NCF).[7] Although plaintiff expansively states in his filings that he was subjected to antisemitism and disrespect for his religion at NCF, the specific claims before the court are far more limited.

In Count I, plaintiff claims his requests for religious accommodations in 2002 and 2003 were not timely addressed. Plaintiff points to his November 18, 2002, request for accommodations for religious holidays, including a specific request for fried food for Hanukkah.[8] The NCF Chaplain (Defendant Penner) forwarded these requests to Topeka for review by the KDOC Director of Religious Programs (Defendant Geither). In a post-Hanukkah response dated January 9, 2003, Geither indicated that fried food for this holiday is a valid request, and directed plaintiff to see the facility chaplain for accommodation. Also, starting June 22, 2003, plaintiff requested accommodation for specific fast days, including requests for sack lunches on specific dates in July, August, September and October 2003. Defendant Penner forwarded these requests to Topeka. An administrative response dated August 19, 2003, approved these requests, but two holy days had already

---

[7]Plaintiff is currently incarcerated in the Lansing Correctional Facility in Lansing, Kansas.

[8]The terms Hanukkah and Chanukkah are used interchangeably throughout the record.

passed.

In Count II, plaintiff contends Aramark employees discriminated against him on the basis of his religion, and cites two specific instances. He first points to Defendant Ratliff's derogatory comment to plaintiff on March 16, 2003, stating "I don't know why we even cook for you Jews." Second, plaintiff identifies Defendant Gruwell's failure to provide plaintiff any type of special item in plaintiff's meal on July 4, 2003, comparable to the special meal served other prisoners that day who were not on a Kosher diet.

In Count III, plaintiff contends Aramark and KDOC staff, including the KDOC Secretary (Defendant Werholtz), the NCF Warden (Defendant Shelton), and the NCF Deputy Warden (Defendant Perdue) discriminated against him by denying plaintiff's administrative grievances and failing to take corrective action.

In Count IV of the complaint as first amended, plaintiff alleges his noon meal on November 15, 2003, was tainted with bodily fluids.

In Count V of the complaint as first amended, plaintiff alleges his disagreement with NCF Chaplin Penner about the process for obtaining candles and a Menorah for Chanukkah in 2003, and argues these materials would have been timely obtained if Defendant Penner had directly requested the items from Aleph-Institute instead of having plaintiff do so.

*Exhaustion of Administrative Remedies*
*(Counts IV and V)*

The court first finds Counts IV and V should be dismissed,

based upon plaintiff's failure to exhaust administrative remedies on these claims.

Plaintiff is required to exhaust all available administrative remedies on his claims before filing suit in federal court. *See* 42 U.S.C. § 1997e(a)("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner's full and complete exhaustion of administrative remedies is required prior to filing a federal complaint concerning prison conditions. Booth v. Churner, 532 U.S. 731, 741 (2001); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). The failure to exhaust is an affirmative defense which the defendants have the burden of pleading and proving. Jones v. Bock, 549 U.S. 199, 212 (2007).

In the present case, defendants raised and argued the affirmative defense that plaintiff had not exhausted administrative remedies on Counts IV and V.[9] Plaintiff's failure to pursue and exhaust formal administrative remedies on these two claims is supported by the record, and is not contested by plaintiff.

---

[9]Defendants Gruwell and Ratliff asserted this defense in their answer and in their motion to dismiss.

Accordingly, the court finds Counts IV and V should be dismissed.[10] See id. at 220-24 (where prisoner has failed to exhaust some but not all of his claims, court should dismiss unexhausted claims and proceed on fully exhausted claims).

*Motions to Dismiss*
*(Counts I-III)*

KDOC defendants Werholtz, Shelton, Penner, Perdue, and Geither seek dismissal of Counts I and III in the amended complaint,[11] arguing plaintiff failed to establish any violation of his First Amendment right to practice his religious beliefs. Additionally, all KDOC defendants but for Defendant Penner contend plaintiff failed to demonstrate any of them personally participated in the alleged deprivation of plaintiff's constitutional rights.[12]

Defendants Gruwell and Ratliff are employees of Aramark

---

[10] Because plaintiff neither contests his failure to exhaust administrative remedies on these two claims, nor maintains he was prevented from pursuing administrative relief, the court finds it appropriate under the circumstances to dismiss Counts IV and V against all remaining defendants.

[11] Plaintiff alleges no misconduct by any KDOC defendant in Count II.

[12] Plaintiff did not specify whether he is suing the KDOC defendants in their individual and/or official capacity. These defendants correctly argue they are entitled to absolute immunity to any extent plaintiff seeks damages from them in the their official capacity. See Kentucky v. Graham, 473 U.S. 159, 169 (1985)(Eleventh Amendment immunity protects state officials sued for damages in their official capacity). Because damages are now the sole relief now being sought in this action, the court dismisses all claims against the KDOC defendants in their official capacity. See also Will v. Michigan Dept. of State Police, 491 U.S. 58, 64 (1989)("neither a State nor its officials acting in their official capacities are 'persons' under 42 U.S.C. § 1983").

Correctional Services, LLC, an entity under contract with KDOC to prepare and serve food to inmates at NCF.  In their motion to dismiss, they argue plaintiff's allegations in Counts II and III in the amended complaint[13] fail to state a claim for relief in that plaintiff failed to demonstrate that either of them were acting "under color of state law" for the purpose of establishing a claim for relief under 42 U.S.C. § 1983, failed to demonstrate that either defendant personally participated in any violation of plaintiff's constitutional rights, and failed to show that defendant Gruwell is a governmental entity for the purpose of stating a claim for relief under the Fourteenth Amendment.

In response to these motions, plaintiff generally argues all defendants are responsible for unlawfully impairing his ability to practice his religious beliefs.  Having reviewed the relevant record, the court finds plaintiff's claims against the remaining defendants should be dismissed for the following reasons.

No Personal Participation

The court finds defendants Werholtz, Shelton, and Perdue should be dismissed because there is no factual or legal basis to establish that any of these defendants personally participated in the alleged violation of plaintiff's constitutional rights.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  Fogarty v.

---

[13]Plaintiff alleged no misconduct by either Aramark defendant in Count I.

Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008)(quotation omitted). Personal participation is an essential allegation in a § 1983 action. Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Plaintiff may not rely on the doctrine of respondeat superior to hold a defendant liable by virtue of the defendant's supervisory position. Rizzo v. Goode, 423 U.S. 362 (1976).

In the present case, plaintiff's claims against defendants Werholtz, Shelton, and Perdue center on their alleged failure to take corrective action on his administrative grievances. This is insufficient to state a claim for relief under 42 U.S.C. § 1983.

Prison officials are only responsible for their own constitutional violations, not generally those of others. The Tenth Circuit has stated that a prison official's denial of grievances is not a sufficient basis to establish the requisite personal participation in the underlying constitutional violations. Larson v. Meek, 240 Fed.Appx. 777, 780 (10th Cir. 2007), *citing* Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002)(per curiam); Whitington v. Ortiz, 2009 WL 74471, 12 (10th Cir. 2009).[14] The record supports no finding that defendants Werholtz, Shelton, or Perdue were personally involved in the alleged denial of timely religious accommodations requested by plaintiff, or in the alleged misconduct by food service personnel. Nor is there any factual basis for finding these defendants were aware of and acquiesced in the alleged misconduct, or that any supervisory defendant established a policy or custom

---

[14]These and any other unpublished decisions are cited for persuasive value, and not as binding precedent. *See* 10th Cir. Rule 32.1.

which authorized or permitted the misconduct alleged in the complaint. Accordingly, plaintiff has failed to state a § 1983 claim against these three KDOC defendants.

No Constitutional Claim

Turning to the remaining defendants, the court finds the amended complaint should be dismissed because plaintiff's allegations fail to state a cognizable claim upon which relief can be granted under 42 U.S.C. § 1983.

Section 1983 itself creates no substantive rights, but merely provides a remedy for deprivations of federal rights established elsewhere. City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985). To sustain a cause of action based on 42 U.S.C. § 1983, a plaintiff must establish two elements: (1) that he suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) that the act or omission causing the deprivation was committed by a person acting under color of law. West v. Atkins, 487 U.S. 42, 48 (1988). A necessary inquiry in any § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. Baker v. McCollan, 443 U.S. 137, 140 (1979).

*Exercise of Religious Beliefs*

Under the First Amendment, applicable to the States through the Fourteenth Amendment, prisoners are entitled to reasonable opportunities to pursue sincerely held religious beliefs. Cruz v. Beto, 405 U.S. 319, 322 (1972); Makin v. Colorado Dept. of

Corrections, 183 F.3d 1205, 1209 (10th Cir. 1999). What constitutes a reasonable opportunity is to be evaluated in the context of the legitimate penological objectives which govern prison life. O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987).

To state of claim under the Free Exercise Clause of the First Amendment, plaintiff must be able to initially show that defendants substantially burdened his ability to practice his religion. Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007). However, otherwise lawful governmental actions having incidental effects of making it more difficult to practice certain religions, but having "no tendency to coerce individuals into acting contrary to their religious beliefs[,] do not constitute substantial burdens on the exercise of religion." Thiry v. Carlson, 78 F.3d 1491, 1495 (10th Cir. 1996). *See also* Mollie v. Ward, 106 F.3d 414, 1997 WL 22525 (10th Cir. 1997)(unpublished)(isolated instances of de minimis burdens on a prisoner's free exercise of religion are insufficient to implicate the First Amendment); White v. Glantz, 986 F.2d 1431 (10th Cir. 1993)(unpublished)(same).

The isolated instances alleged in the present case, even when assumed as true and construed in the light most favorable to plaintiff, are simply insufficient to provide a factual basis for plausibly finding any defendant violated plaintiff's rights under the First Amendment. Contrary to plaintiff's conclusory claim of intentional interference and discriminatory disregard, the factual record provided by plaintiff and not challenged by defendants demonstrates instead defendants' efforts to address and accommodate

13

plaintiff's religious requests. No systematic or continuous deprivation is at issue. *See e.g.*, Gonzalez v. Corrections Corporation of America, 2008 WL 5145600 (N.D.Miss. December 5, 2008)(denial of thirteen pork-free meals over an eight month period resulted from imperfect implementation of valid system for accommodating religious dietary needs, and did not substantially burden prisoner's religious exercise).

Although plaintiff broadly claims his requests for accommodation sent through Defendant Penner resulted in untimely approvals by Defendant Geither or other unnamed KDOC staff, the isolated instances plaintiff identifies reflect at most negligence which is insufficient to state a claim for relief under § 1983. *See* White, 986 F.2d at *2 (annoyance and exasperation over isolated negligence in service of religious meal to plaintiff states no First Amendment claim). *See also* Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir. 2006)(*citing* Daniels v. Williams, 474 U.S. 327, 329-31 (1986))(extending negligence analysis in Daniels to inmate's First Amendment free exercise claim); Lewis v. Mitchell, 416 F.Supp.2d 935, 944 (S.D.Cal. 2005)(more than negligence is required to state a valid § 1983 claim for violation of prisoner's First Amendment right to freely exercise religion)(*citing* Shaheed v. Winston, 885 F.Supp. 861 (E.D.Va. 1995), *aff'd*, 161 F.3d 3 (4th Cir. 1998)). While plaintiff's frustration over the processing of his requests for religious accommodations may be understandable, the burden on plaintiff's exercise of his religious beliefs was incidental rather than substantial. *Compare*, Warren v. Peterson, 2008 WL 4411566

(N.D.Ill. Sept. 25, 2008)(Chaplin's two week failure to approve religious vegan diet of transferred prisoner, notwithstanding previous facility's approval of the diet and Chaplain's awareness of prisoner's weight loss and suffering while Chaplain's approval was pending, stated a First Amendment claim).

Accordingly, even accepting plaintiff's allegations as true, there is an insufficient factual support to plausibly find that plaintiff's right to freely exercise his religion was substantially burdened. Plaintiff's allegations thus fail to state a cognizable First Amendment claim that any defendant violated plaintiff's rights under the First Amendment.

*Equal Treatment*

Plaintiff's allegations of being denied equal treatment based upon his religious beliefs fare no better.

Under the Equal Protection Clause of the Fourteenth Amendment, prison officials are only required to ensure that each religious group has a reasonable opportunity to exercise its religious beliefs. Cruz v. Beto, 405 U.S. at 322 n. 2. Identical treatment to various religious groups is not required. Id.

Again, no prison regulation or policy is at issue, and only de minimis misconduct is alleged. Plaintiff cites a single derogatory remark by Defendant Ratliff, which the court has already found to be insufficient to establish that plaintiff was denied a reasonable opportunity to practice his faith. Plaintiff also cites Defendant Gruwell's failure to provide plaintiff a comparable Kosher meal to celebrate the Fourth of July in 2003. Plaintiff contends this

15

disrespected and disparaged his patriotism. Plaintiff broadly referred to this incident as treating all Jews in KDOC custody as "noncitizens," and he sought recognition by Aramark and KDOC employees of plaintiff as an American citizen. Significantly, however, plaintiff alleges nothing to demonstrate this single incident impaired his ability to exercise his *religious* beliefs.

These isolated instances fail to establish a cognizable constitutional claim that defendants failed to afford plaintiff a comparable and reasonable opportunity to pursue his faith as afforded other prisoners, Cruz v. Beto, 405 U.S. at 322.

## CONCLUSION

The court thus concludes that even if it is presumed the Aramark defendants were acting under color of state law within the meaning of 42 U.S.C. § 1983,[15] plaintiff has not provided sufficient

---

[15] The court need not decide whether the individual Aramark defendants in this case were "acting under color of state law" within the meaning of 42 U.S.C. § 1983, or within the meaning of the "state action" required under the Fourteenth Amendment. *See* Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 929 (1982)(§ 1983 statutory requirement of action "under color of state law" is identical to "state action" requirement of Fourteenth Amendment).

Aramark defendants maintain they were not state actors, and cite Keeling v. Schaefer, 181 F.Supp.2d 1206 (D.Kan. 2001), in support. The court notes, however, that in the context of a prison, the Supreme Court has held that a physician under contract with the state to provide *essential medical services* to state prisoners was "acting under color of state law for purposes of § 1983....[and that] such conduct is fairly attributable to the State." West v. Atkins, 487 U.S. 42, 54 (1988). A state's contractual delegation to a private entity, such as Aramark, to provide *essential food services* to prisoners, appears comparable for analyzing § 1983 liability.

Also, Keeling is distinguishable. In that case the district court thoroughly examined the state action doctrine within the Tenth Circuit, and determined an employee of a private entity (Impact

reason for this court to believe plaintiff "has a reasonable likelihood of mustering factual support for [his] claims," Red Hawk, 493 F.3d at 1177, or sufficient factual allegations to establish a plausible actionable claim under 42 U.S.C. § 1983 against any defendant. The court thus concludes the amended complaint should be dismissed.

IT IS THEREFORE ORDERED that plaintiff's motion for reconsideration (Doc. 78) is denied.

IT IS FURTHER ORDERED that defendants' motions to dismiss the amended complaint (Docs. 72 and 77) are granted, and that the amended complaint is dismissed and all relief is denied.

**IT IS SO ORDERED.**

DATED: This 31st day of March 2009 at Topeka, Kansas.

                                         s/ Sam A. Crow
                                         SAM A. CROW
                                         U.S. Senior District Judge

---

Design) operating an embroidery business at the prison was not clothed with the authority of state law. In doing so, however, the district court determined that Impact Design had *not* entered into a relationship with KDOC to perform a function exclusively reserved to the state, id. at 1230, such as the essential services provided in West and arguably in the present case.